H. S. FOOTE, DISTRICT ATTORNEY, EX. REL. W. H. H. GREEN, *v.* DANIEL X. BROWN, TREASURER, ETC.,

AND

SAME *v.* S. B. THOMAS, SHERIFF, ETC.

1. SCHOOL WARRANTS. *How to be paid. Deficiency in fund. Constitution and statutes construed.*

Sect. 5, Art. VIII., of the Constitution, requires that public schools shall be kept open at least four months in each year, and devotes the funds arising from various specified sources to the execution of this requirement. The statutes (sect. 713, Code 1880), enlarge the time that such schools shall be kept open to five months, direct (sect. 724, Code 1880, and Acts 1882, p. 77) that if the sum arising from the constitutional sources shall in any year be less than $300,000, it shall be raised to that amount out of the State treasury, provide (sect. 725, Code 1880) that this fund shall annually be distributed among the several counties according to the number of children in each, within the school age, and then (sect. 730, Code 1880) make it the duty of the Board of Supervisors of each county to levy a tax not exceeding three mills (three mills absolutely, by Acts 1882, p. 77) upon the taxable property of the county, "to make up any deficiency in the aggregate amount of common-school funds, arising from other sources, necessary to maintain the public free schools of said county during the time required by law." By sect. 727 of the Code of 1880 county treasurers are directed "to pay no second month teacher's warrants, unless sufficient money remain in the treasury to pay all first month warrants, issued or to be issued, and to maintain the same order of payment throughout the whole number of months taught." The scheme of taxation established by these constitutional and legislative provisions, not only contemplates the raising, each year, no more money than is sufficient to defray the school expenses of that year, but it limits the amount to be raised to such sufficiency, and restricts the power to raise the same to the purpose of conducting the schools during the year. Hence, a tax-collector cannot be compelled to receive in payment of the common-school fund tax of 1882 a teacher's warrant issued for services of a previous year; nor can a county treasurer be compelled to pay such warrant out of the common-school fund of the year named, it not being shown that there is any surplus above what is necessary to meet the expenses of that year.

2. SAME. *Whether the subject of mandamus.*

School warrants, or teacher's warrants, probably, not to be assimilated to judgment against a county, as general county warrants are, so as to authorize the issuance of a *mandamus* to compel their payment when payment should be made; but the question not here decided.

APPEALS from the decision of Hon. T. J. WHARTON, Judge of the Ninth Judicial District, refusing to grant writs of *mandamus* in the cases stated in the opinion of the court.

*Calhoon & Green*, for the appellant.

There is no specific appropriation of the common school fund proper by the constitutional and statutory provisions in relation thereto, since all must be distributed without regard to any one year. It must all be distributed with the sole restriction that it must be *pro rata*. If the sum for distribution be less than $300,000, the general State funds should make good the deficit. It follows that, if the general school fund was enough for all expenses, there would be no ground to claim specific appropriation for any one year to have been the design.

In order to avoid the stoppage of schools on account of deficiency of funds, sect. 730, Code 1880, and amendment, requires the Board of Supervisors to levy a tax of three mills, for the credit of the common school fund, to make up the deficiency necessary to maintain the schools for the time required by law. This being to make up the difference between the amount of the funds from all sources and the amount required to carry on the schools for the period fixed by law, it was a power not easy of definition, because the amount needed to keep the schools open was uncertain. The time was certain; the amount coming from the State was certain, but the expense was not; hence the Legislature had to define it descriptively and relatively. If the amount to be raised had been certain, the language would have been as in sect. 724. Being uncertain, it had to be described as the amount " necessary to maintain the public free schools of said county during the time required by law," the purpose being to supply a deficiency unknown. So, these terms are to define the sum to be raised, and not a specific appropriation to a particular fiscal year. As further evidence of this, the sum so raised to supply the deficiency is to be placed " to the credit of the common school fund." Sect. 730. The common school fund is not appropriated to the fiscal year. Sects. 724, 725. It is curious that, while the common school fund is unappropriated to any particular fiscal year, the little deficiency fund should be so restricted ; although its char-

acter as a deficiency fund ceased, and it was appropriated to the credit, and to become part, of the common school fund, still that it should retain the impress of specific appropriation.

Sect. 723 requires warrants to show on their face the month for which issued, as first month, second month, etc. ; and it is elsewhere provided that the subsequent month shall not be paid in advance of the preceding ; and we find, at the close of sect. 730, that the taxes levied for deficiency may be paid in warrants on the common school fund, without any express reference to priorities or to the current fiscal year.   It would seem from this that, while the deficiency would have to be appropriated, on the reasoning used against us, the warrant-holders of prior years might practically absorb the fund in paying taxes. This would follow from the same literal rule of construction which might lead to the conclusion arrived at in the first instance.   The only satisfactory solution is, to carry the doctrine of priorities into preceding years, and adopt the construction of protecting antecedent services through all time. By this means the deserving teachers could ascertain the *status* of their contracts, and know when to quit the school-room for vocations offering prompt payment..   It could not have been the design to entrap them.   It cannot be assumed that the Legislature intended to deprive the teachers of 1880 and 1881 of all pay, because the fund of those years fell short.

Again, may we not find a legislative construction in the act of 1882, amending sect. 730?   It did not leave the amount of tax for deficiency to be varied by the requirements of each fiscal year, but fixed the tax at three mills.   If the deficiency required but one mill, we would then find two mills unappropriated, and not possible of appropriation for previous years, which would work an absurdity.

Again, suppose the treasurer, under sect. 727, reports available funds at a sum which, with the State appropriation, required a one-mill tax to cover the deficiency ; and suppose forfeitures for unpaid taxes occasioned a deficiency, and, to

that extent, left teachers unpaid ; would the teacher have to go unpaid until the forfeited property was redeemed? This cannot be presumed to have been the intention of the Legislature. That the tax indicated is an annual tax proves nothing. All taxes are annual. Directing the annual exercise of the taxing power is quite different from specific appropriation of the tax to a particular year's expenses.

*S. S. Calhoon,* of counsel for the appellant, argued the case orally.

*Robert Shotwell,* for the appellee.

By examining the statutes in relation to common schools, it clearly appears that the tax levied by sect. 730 is for a special purpose, to-wit : the payment of current expenses of the common schools in the counties for the years levied. The fact that there may not have been a specific appropriation of such funds as are derived from other sources by sects. 724 and 725 can make no difference.

By sect. 723, the clerk of the Board of Supervisors is directed to specify, on drawing warrant for compensation of teachers, whether services were for first or second months, and so on.

By sect. 727, the treasurer is required to pay no second month warrants until first are paid. It thus appears that it was the scheme of the Legislature to require the payment of warrants in each scholastic year, with reference to priority of months of each year.

We contend further, that the clerk of the Board of Supervisors has no right to issue warrants in excess of the funds available from all other sources, added to the amount to be realized from sect. 730. He must know the aggregate amount of warrants which he had previously issued, for he is required to keep all certificates of superintendents on file, and he also knows, as clerk of the Board of Supervisors, the other expenses of the free schools. He knows the amount derived from all other sources, except tax to be realized, under sect. 730, and he knows that this cannot exceed a certain amount. Hence, we contend that

the warrants are illegally issued, whenever they exceed the amount of the funds available for that purpose.

The argument of counsel to extend the priorities into preceding years, and thus pay, for example, a fifth month warrant of 1880, instead of a first month warrant of 1881, out of the funds for the scholastic year 1881, would lead to the most anomalous result. It would appropriate the tax levied under sect. 730, for 1881, to the payment of warrants of 1880, and the whole three mills thus realized, would be appropriated without reference to the scholastic year for which it was levied. We insist that the tax levied under sect. 730, is for the specific purpose of making up a deficit for each scholastic year, and appropriable only to such year.

CHALMERS, J., delivered the opinion of the court.

These cases were submitted together. They are writs of *mandamus* brought against the treasurer and sheriff of Hinds County respectively, to enforce payment in the one case, and to compel the reception of taxes due in the other, of school warrants of said county, issued in the year 1880. Counsel on both sides treat these warrants as standing on the same footing as general county warrants, which this court has so far assimilated to judgments against the county, as to authorize the bringing of *mandamus* to compel their payment. We are inclined to think that they stand upon a different footing, having never been adjudicated by the Board of Supervisors, and should rather be made the basis of ordinary suits; but as we are advised that the object of the proceeding is to settle a question of public interest, and as no objection is made to the form of action, we will examine the questions involved upon the assumption that *mandamus* will lie.

The defence set up by the county, through her officials, is, that there is no money in the treasury belonging to the school fund, except such as has been specifically raised for carrying on the free schools for the current year, and that no taxes have been levied or are being collected except for that purpose, and that the funds thus collected, being collected for a specific pur-

pose, cannot be diverted to the payment of outstanding warrants issued in past years. Whether this affords any defence to the actions is the question presented, and its solution depends upon an examination of the machinery provided by our laws for carrying on and defraying the expenses of the public schools of the State.

The Constitution, sect. 5, Art. VIII, requires the free schools to be kept open at least four months in each year, and devotes the funds arising from various specified sources to the execution of this requirement.

The statutes (Code 1880, sect. 713) enlarge the time to five months, direct (Acts 1882, p. 77, amending Code, sect. 724) that if the sum arising from the constitutional sources shall in any year be less than three hundred thousand dollars it shall be raised to that sum out of the State treasury, provided that this fund shall annually be distributed among the several counties according to the number of children, within the school age, contained in each (Code, sect. 725), and then by sect. 730 makes it the duty of the Board of Supervisors of each county to levy a tax of not exceeding three mills (by the Act of 1882, p. 77, absolutely three mills), upon the taxable property of the county "to make up any deficiency in the aggregate amount of common school funds, arising from other sources, necessary to maintain the public free schools of said county during the time required by law."

By sect. 727 of the Code the county treasurer is required to note on every warrant the month for which the service evidenced by it was rendered, and he is prohibited from paying the warrants of a later month until those of all precedent months have been paid. Manifestly, the scheme is annual in its character, and contemplates the raising each year of money sufficient for defraying the school expenses of that year, and no more. But all schemes of taxation are annual in their character, and ordinarily contemplate nothing more than the raising of sufficient revenue to defray the expenses of government for the current or ensuing year; and if nothing more than this can be said of the system under examination, mani-

festly it affords no answer to plaintiff's demand. A closer examination, however, discloses the fact that more than this must be said of our school laws. Not only do they provide alone for raising money sufficient for the expenses of the year, but there is an entire absence of any authority in any department of the government, save the Legislature, to raise more than this, at least beyond the limit of three mills upon the taxable property of the county. Conceding that the relator's warrants in this case are judgments against the county, a concession which must be made to maintain these actions, he already has all that we can give him, except where he can show that there is an excess over the requirements of the year in the treasury. The limitation upon the power of taxation is something more than a limitation upon the amount which the board may raise. It is a limitation also, upon the purpose for which it may be raised. The tax can be levied and collected solely for the purpose of conducting the schools during the year, though it is doubtless true, that if the levy imposed resulted in the collection of a greater sum, the excess could be reached by the holder of warrants of other years. However meritorious may be the demands of such holders, and however anxious the board may be to provide for their payment, it is powerless to do so. Deriving its power of taxation from the Legislature, it cannot exceed the limit given, either as to amount or purpose. It is plain, therefore, that the county cannot be compelled by *mandamus* to pay a debt when it has on hand no fund out of which it can be paid, and when there is no authority in any of its functionaries to impose or collect a tax for the purpose. If this view of the law needs to be fortified, it is greatly strengthened by legislative recognitions of the fact that there is no law in existence for the payment of this class of warrants, which are to be found in several statutes providing special funds for their satisfaction. Acts 1875, p. 60 ; Acts 1877, p. 109.

Affirmed.